# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIRST KOREAN CHURCH OF NEW YORK, INC.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHELTENHAM TOWNSHIP ZONING HEARING BOARD and** | : | |
| **CHELTENHAM TOWNSHIP** | : | **No. 05-6389** |

**Norma L. Shapiro, J.**                                                      **February 29, 2012**

## MEMORANDUM

Plaintiff, First Korean Church of New York, Inc. ("First Korean") brought this action against defendants, Cheltenham Township (the "Township") and Cheltenham Township Zoning Hearing Board (the "ZHB"). First Korean alleges the Township's zoning ordinances prevent it from using property located at 920 Spring Avenue, Cheltenham Township, Pennsylvania (the "Property") as a church and seminary. First Korean alleges that defendants have violated the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, et seq.

Before the court are cross-motions for summary judgment. For the following reasons, the court will deny First Korean's Second Renewed Motion for Summary Judgment (paper no. 134) and grant defendants' Second Renewed Motion for Summary Judgment (paper no. 133). First Korean's Motion for Expedited Rulings on Motions for Summary Judgment (paper no. 203) will be denied as moot.

# I. FACTUAL BACKGROUND[1]

## A. The parties

First Korean is a Bible-based, Christian church of Presbyterian denomination. Dr. Richard Yoon is its President and pastor.

The Township is a First Class Township in Pennsylvania empowered to act through its governing body, officials, employees, and official bodies. It has the power to regulate and restrict the use of land and structures within its borders.

The ZHB hears and decides appeals concerning Cheltenham zoning ordinances, as well as requests for special exceptions to, and variances from, those ordinances.

## B. The Township's zoning ordinances

The Cheltenham Zoning Ordinance of 1929, as amended (the "1929 Ordinance"), established R-Residence districts as part of a comprehensive plan for development within the Township. Under the 1929 Ordinance, parties seeking to use property in an R-Residence district for a religious purpose could petition the ZHB for a special exception.

The Township is primarily a residential community. It has little commercial tax base compared to other communities that have regional malls and large shopping districts. The primary burden of real estate taxes in the Township falls on residential property owners. When the 1929 Ordinance was amended in 2003, approximately fifteen to twenty percent of all property

---

[1]  The parties stipulated to some of the following facts. *See* paper nos. 131, 132, 155, 156. All others are drawn from the record.

in the Township was tax-exempt. As a result, the Township had one of the highest real estate taxes in Montgomery County.

In an effort to reduce the tax burden on residential property owners, the Township adopted Ordinance 2034-03 (the "2003 Ordinance"). The 2003 Ordinance amended the 1929 Ordinance to eliminate special exceptions for educational and religious use in the R-1, R-2, R-3, M-1, M-2, M-3, C-3, and G districts. Under the 2003 Ordinance, parties seeking to use property for an educational or religious purpose in the affected districts would have to apply for a variance. The change was advertised pre- and post-adoption in a newspaper of general circulation.

### C. The Property

First Korean purchased the Property at a sheriff's sale in 1996. The Property comprises Parcels No. 31-00-00820-004 (23.795 acres) and No. 31-00-00823-00-1 (10.014 acres), a total of 33.809 acres. The previous owner was Faith Theological Seminary ("FTS"), a separate organization with which First Korean had a close working relationship. The Property is within the Township's R-2 Residential district.

There are three buildings on the Property: Lynnewood Hall, Conklin Hall, and the Gatehouse. Lynnewood Hall has one hundred and ten rooms; FTS, its previous owner, dismantled its interior and sold whatever was severable when FTS fell into financial difficulty. First Korean uses part of the first floor but the rest of the building is unusable.

Conklin Hall has forty-four rooms and was dismantled and almost demolished by FTS. Pastor Oh and his wife reside at Conklin Hall in three rooms; the rest of the building has no heat and is uninhabitable. The Gatehouse is currently empty.

Both entrances to the Property have locked gates. The main entrance can be opened by remote control after Pastor Oh is notified.

Police monitored the Property twice in 1997. On November 30, 1997, police observed no vehicles or persons entering the Property. On December 7, 1997, police observed three vehicles entering the Property. *See* paper no. 70, ex. 3, p. 77–78; ex. 13, p. 1–2. There is no evidence that defendants were aware of the police monitoring.

On May 20, 1998, David Lynch, Director of Engineering, Zoning, and Inspections for the Township, sent First Korean a letter stating that First Korean was in violation of the 1929 Ordinance because it had not obtained a special exception to operate a church in a residential district. First Korean had erected a sign at its main entrance advertising its church services; Lynch's letter directed First Korean to remove the sign and notified it that the Township could impose "a fine of up to $500 per day for each day the violation continue[d]." *See* paper no. 70, ex. 5. First Korean applied for a special exception, and the Township did not impose the fine.

In October 1998, a Montgomery County tax assessor visited the Property and observed a chapel, classrooms, offices, and library. He also observed overgrown vegetation, a deteriorating driveway, and rooms filled with debris and old mattresses. Township representatives visited the Property in 2004 and observed falling ceilings, leaking and stained roofs, and walls with exposed wires and joists.

4

The Township believes that: (1) the physical condition of the Property is inconsistent with public safety and the interest of the community; (2) First Korean does not facilitate community interaction or exchange; and (3) absent zoning relief, the Township believes that "[i]f church services are being operated on [the Property] to any degree, it is an illegal use[.]" *See* paper no. 70, ex. 3, p. 28–29, 60.

If the Property were developed, it could generate "a significant amount of tax revenue" for the Township as a "very attractive residential use[.]" *Id.* at 21. Developers have expressed interest in purchasing the Property. *Id.* at 22.

### D. 1998 special-exception application

In 1998, First Korean appealed the determination of a zoning officer that use of the Property for religious or educational purposes violated the 1929 Ordinance. In the alternative, First Korean sought a special exception to use the premises for a theological seminary and weekly church services.

The proposed seminary was to provide education to post-graduate students. Married students attending the seminary would reside off-campus, and approximately five to seven unmarried students would reside on-campus. The seminary would operate between 9:30 a.m. and 2:30 p.m. on weekdays, and church services would occur between 11:00 a.m. and 12:30 p.m. and from 4:30 p.m. to 6:00 p.m. on Sundays only. The total number of congregants would be twenty-five to thirty.

First Korean's proposal would use seven of the Property's thirty-three acres and would include: (1) a parking lot for fifty cars; (2) the first floor of Lynnewood Hall as the seminary

campus; (3) the second floor of Lynnewood Hall as a library; and (4) the third floor of Lynnewood Hall as a dormitory. First Korean also proposed to develop the remaining acreage for religious uses but did not explain how it would do so.

After four hearings, the ZHB observed that the proposed seminary was not operational and that First Korean had not applied to any educational department or agency to operate the proposed seminary. The 1929 Ordinance limited conforming educational uses to those "recognized, supervised and under the control of" the Commonwealth. *See* paper no. 70, ex. 8, p. 18. The ZHB declined to approve a special exception for educational use. *Id.* at 19. The ZHB also noted that the Property had been cited in 1997 and 1998 for its high grass, deteriorating exterior fence, and poorly kept lawns, shrubbery, and trees. *Id.* at 10, 13. The ZHB found it "not inconsequential" that the grounds were deteriorating, and it did not believe that the proposed church use could support any good-faith effort to reverse those conditions. *Id.* at 20.

The ZHB explained that the Township permitted religious uses in residential districts because neighborhood churches were consistent with residential areas. *Id.* at 21. But First Korean's proposed use was inconsistent with residential areas because, *inter alia*, First Korean proposed to locate its church in "one or two rooms" in a building with one hundred and ten rooms on a thirty-three acre property encircled by a padlocked wrought-iron fence. *Id.* The ZHB, citing public health, safety, and welfare, held that First Korean's proposed use of the Property would have been inconsistent with residential religious use as contemplated by the 1929 Ordinance and would have resulted in a rezoning of the Property. *Id.* at 23.

6

After the ZHB denied First Korean's request for a special exception, First Korean appealed to the Montgomery County Court of Common Pleas, the Commonwealth Court of Pennsylvania, and the Pennsylvania Supreme Court. The Montgomery County Court of Common Pleas and the Commonwealth Court of Pennsylvania affirmed the ZHB's decision, and the Pennsylvania Supreme Court denied allocatur on May 30, 2001.

### E. 2000 special-exception re-application

In 2000, as appeals in the 1998 special-exception proceeding were pending, First Korean filed a second application for a special exception. First Korean stated that, after the 1998 proceedings before the ZHB, it had been operating a seminary on the Property, which substantially changed the circumstances and warranted review. *See* paper no. 167, p. 4–5. First Korean asked the ZHB to either: (1) consider its proposed use a continuance of the prior use by FTS; or (2) grant a special exception allowing First Korean to use the Property as a seminary and church. *Id.* at 2–3.

After two hearings, the ZHB concluded that it could not consider any issue pending before the Commonwealth Court. *Id.* at 5–6. The ZHB noted that "substantial change" refers to a substantial change in the property's *condition*, not its use. *Id.* Citing *res judicata* and collateral estoppel, the ZHB denied First Korean's re-application on August 14, 2000. *Id.* at 6.

### F. 2007 variance application

On May 7, 2007, First Korean applied for a variance. At the ZHB hearing, although represented by J. Michael Considine, Esq. in the application process, First Korean (through Dr. Yoon) appeared at the hearing unrepresented. *See* paper no. 133, ex. N, p. 2. Mr. Considine

7

attended the hearing and participated as a "witness," not as a lawyer. *Id.* at 11. First Korean failed

to bring its appeal under RLUIPA or any constitutional provision and declined the ZHB's

invitation to amend its application to include a RLUIPA claim. *See id.*, ex. O, p. 3 ("At the July

7, 2007 hearing, Dr. Yoon declined the opportunity to amend the Application to [the ZHB] to

include a request for relief other than variance relief."; "First Korean made no application for

zoning relief based solely on RLUIPA."); p. 4 ("First Korean Church . . . refused the invitation to

broaden its appeal."). Instead, First Korean "steadfastly held its ground in advocating a variance

for itself[.]" *Id.* at 4.

Under the Pennsylvania Municipalities Planning Code, a ZHB may grant a variance from

a zoning ordinance only if the ZHB makes all of the following findings:

> (1) That there are unique physical circumstances or conditions . . . peculiar
> to the particular property . . .

> (2) That because of such physical circumstances or conditions, there is no
> possibility that the property can be developed in strict conformity with the
> provisions of the zoning ordinance . . .

> (3) That such unnecessary hardship has not been created by the appellant.

> (4) That the variance, if authorized, will not alter the essential character of the
> neighborhood or district in which the property is located, nor
> substantially or permanently impair the appropriate use or development of
> adjacent property, nor be detrimental to the public welfare.

> (5) That the variance, if authorized, will represent the minimum variance
> that will afford relief and will represent the least modification possible of
> the regulation in issue.

52 P.S. § 10910.2. The ZHB found that First Korean presented no evidence upon which the ZHB

could have made any of those findings. Instead, First Korean "was content to link RLUIPA in

some way to a variance." *See* paper no. 133, ex. O, p. 6. Finding that First Korean failed to

present any evidence allowing the ZHB to grant a variance, the ZHB denied First Korean's

application on August 13, 2007. *Id.* at 7. First Korean did not appeal.

### G. Tax assessment proceedings (1998–2011)

While First Korean's first special-exception application was pending, it also sought an

exemption from property taxation for the Property. On December 4, 1998, the Montgomery

County Board of Assessment denied First Korean's request for a tax exemption as a religious

use. First Korean appealed to the Montgomery County Court of Common Pleas. The court,

concluding that only property used for an authorized purpose was entitled to tax-exempt status,

granted summary judgment to the Township because First Korean's 1998 special exception

application had been denied by the ZHB and on appeal, so a religious use was not authorized. *See*

paper no. 152, ex. 16, p. 4.

In 2006, First Korean appealed to the Commonwealth Court of Pennsylvania. The

Commonwealth Court held that the taxing authority, when deciding whether the Property was

entitled to a tax exemption, should have considered the actual use of the Property and not

whether that use conformed to the zoning ordinance. *First Korean Church of N.Y., Inc. v.*

*Montgomery Cnty. Bd. of Assessment Appeals*, 926 A.2d 543, 547 (Pa. Commw. Ct. 2006). The

Commonwealth Court remanded for further proceedings to determine whether First Korean's use

of the Property fell within the place-of-worship tax exemption. *Id.* at 548.

On remand, the Montgomery County Court of Common Pleas held a two-day non-jury

trial. The court found no regular church-related activity had taken place on the Property since

1998, *see* paper no. 196, ex. A, p. 9, and the evidence "clearly demonstrated that this property is

9

not primarily used for religious worship[,]" *see id.* at 12. First Korean appealed, and the Commonwealth Court affirmed. *See First Korean Church of N.Y., Inc. v. Montgomery Cnty. Bd. of Assessment Appeals*, No. 1551 C.D. 2010, 2011 Pa. Commw. Unpub. LEXIS 448, at *16 (Pa. Commw. Ct. June 14, 2011).

## II. PROCEDURAL HISTORY

First Korean filed this action on December 12, 2005, and challenged the denial of the 1998 and 2000 special-exception applications. First Korean filed its first amended complaint on December 12, 2006, and moved for summary judgment on December 14, 2006. Defendants cross-moved for summary judgment on January 4, 2007. The court placed the action in suspense while First Korean unsuccessfully sought a variance under the 2003 Ordinance.

Following oral argument on the cross-motions for summary judgment, First Korean filed its second amended complaint on March 18, 2008. The parties then filed renewed cross-motions for summary judgment. After a second oral argument, the court ordered the parties to submit a joint set of stipulated facts. *See* paper nos. 155, 157.

First Korean's motion for summary judgment seeks judgment in its favor on its RLUIPA claim and constitutional claims under the First and Fourteenth Amendments. Defendants' motion for summary judgment seeks dismissal of all First Korean's claims.

## III. LEGAL STANDARD

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Meditz v. City*

*of Newark*, 658 F.3d 364, 369 (3d Cir. 2011). The court must view all evidence and draw all inferences in the light most favorable to the non-moving party. *Id.*

Where, as here, the parties have presented cross-motions for summary judgment, the court considers each party's motion individually. Each side bears the burden of establishing a lack of genuine issue of material fact.

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

## IV. DISCUSSION

First Korean, moving for summary judgment on all claims, argues that defendants have violated RLUIPA and the First and Fourteenth Amendments of the U.S. Constitution. First Korean also argues that the 2003 Ordinance is facially unlawful. *See* paper no. 64 at 31. Defendants, moving for summary judgment on all claims, argue that First Korean has failed to proffer sufficient evidence to support its claims.

Seven events give rise to First Korean's as-applied RLUIPA and constitutional claims: (1) the ZHB's denial of First Korean's 1998 special-exception application, *see* Sec. Am. Compl. (paper no. 131) ¶¶ 36, 41; (2) the ZHB's denial of First Korean's 2000 special-exception re-application, *id.* ¶ 55; (3) the Township's enactment of the 2003 Ordinance, *id.* ¶ 56; (4) the ZHB's denial of First Korean's 2007 variance application, *id.*; (5) police monitoring of the

11

Property in 1997 and 2009–10,[2] *id.* ¶¶ 34, 54; (6) the Township's threatening First Korean with fines, *id.*; and (7) the Township's alleging First Korean's use of the Property was illegal, *id.* ¶ 36. The court assumes that First Korean's as-applied claims refer to each of these events.[3]

## A. The *Rooker-Feldman* doctrine

Under the *Rooker-Feldman* doctrine, federal district courts may not exercise jurisdiction over claims actually litigated in state court or inextricably intertwined with a state adjudication. *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 325–26 (3d Cir. 2000). The doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If a federal plaintiff presents an independent claim, even one that denies a legal conclusion reached by a state court in a case in which the plaintiff was a party, the district court has jurisdiction. *Id.* at 293.

---

[2] Police monitored the Property in 2009–10 in relation to the tax-exemption trial in the Montgomery County Court of Common Pleas. *See* paper no. 196, ex. A, p. 7–8.

[3] First Korean also alleged that the state court's "denial of a tax exemption based on an alleged illegal use" violated RLUIPA. *See* Compl. (paper no. 1) ¶ 36; Sec. Am. Compl. (paper no. 131) ¶ 36. Although the Montgomery County Court of Common Pleas originally held that First Korean was not entitled to a tax exemption because its use of the Property was an illegal use, the Commonwealth Court remanded for determination on whether First Korean's use was entitled to a tax exemption whether or not its use was legal. *First Korean Church of N.Y., Inc. v. Montgomery Cnty. Bd. of Assessment Appeals*, 926 A.2d 543, 547–48 (Pa. Commw. Ct. 2006). On remand, the Common Pleas court held that First Korean was not entitled to a tax exemption because it was not a place of regularly stated religious worship, *see* paper no. 196, ex. A, p. 9, and the Commonwealth Court affirmed. *See First Korean Church of N.Y., Inc. v. Montgomery Cnty. Bd. of Assessment Appeals*, No. 1551 C.D. 2010, 2011 Pa. Commw. Unpub. LEXIS 448, at *16 (Pa. Commw. Ct. June 14, 2011). Because the Common Pleas court decision on remand was not "based on an alleged illegal use[,]" as alleged in First Korean's original and second amended complaints, the state-court tax-exemption proceedings relate to collateral estoppel only.

First Korean was denied a special exception to the 1929 Ordinance in state court before these proceedings commenced. But its federal claims with respect to the 1998 special-exception denial are not "inextricably intertwined" with state-court adjudications because, in order to decide these claims, this court "would not have to review the state courts' determinations that the [ZHB's] decisions were supported by substantial evidence in the record." *See Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 326 (3d Cir. 2000). The Common Pleas and Commonwealth courts reviewed and affirmed the ZHB's decision, but First Korean's RLUIPA claims or constitutional claims were not litigated. *Rooker-Feldman* does not deny this court jurisdiction over claims regarding the 1998 special-exception application denial.

First Korean did not appeal the 2000 special-exception re-application denial or the 2007 variance application denial to state court. Because there are no state-court zoning decisions to review, *Rooker-Feldman* does not deny this court jurisdiction over the denials of the 2000 special-exception re-application and the 2007 variance application.

## B.  RLUIPA claims

### 1. Retroactivity

RLUIPA became effective on September 22, 2000—about five weeks after the ZHB denied First Korean's 2000 special-exception re-application. The statutory language of RLUIPA does not address its retroactive applicability. *See* 42 U.S.C. §§ 2000cc to cc-5; *Mayweathers v. Terhune*, 328 F. Supp. 2d 1086, 1098 (E.D. Cal. 2004).

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When,

however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

Applying RLUIPA retroactively to acts predating enactment of the statute would attach new legal consequences to past conduct. RLUIPA does not apply to the 1998 and 2000 special-exception application denials, nor to the police monitoring of the Property in 1997. It does apply to the 2003 Ordinance, the enactment of the 2003 Ordinance, the denial of the 2007 variance application, the police monitoring of the Property in 2009–10, the threats to First Korean of fines, and the allegations that First Korean's use of the Property was illegal.

### 2. Statute of Limitations

RLUIPA does not provide a limitations period, so courts have applied the four-year catch-all statute of limitations of 28 U.S.C. § 1658(a) to RLUIPA claims.[4] *See, e.g.*, *Miles v. Lansdowne Borough*, C.A. 11-1913, 2011 U.S. Dist. LEXIS 118272, at *7 n.2, 2011 WL 4852429, at *3 n.2 (E.D. Pa. Oct. 13, 2011); *Congregation Adas Yereim v. City of N.Y.*, 673 F. Supp. 2d 94, 107 (E.D.N.Y. 2009) ("It is undisputed that the four-year catch-all statute of limitations, codified at 28 U.S.C. § 1658(a), governs claims brought under RLUIPA.").

---

[4] Under 28 U.S.C. § 1658(a), "a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

### (i) Facial challenge to the 2003 Ordinance

The 2003 Ordinance was passed on April 15, 2003. First Korean facially challenged the 2003 Ordinance under RLUIPA in its original complaint on December 12, 2005 (less than four years later) and its second amended complaint on July 8, 2008 (more than four years later). *See* paper no. 1, ¶ 39; paper no. 131, ¶ 39.

"An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). First Korean's facial challenge in its second amended complaint is identical to the facial challenge in its original complaint. In both its second amended complaint and its original complaint, First Korean claims that "Defendants have totally excluded religious assemblies from the R2 Residence District and/or unreasonabl[y] limited religious assemblies within Cheltenham Township." *Compare* paper no. 131, ¶ 39 *with* paper no. 1, ¶ 39. First Korean's facial challenge to the 2003 Ordinance relates back to the date of First Korean's original complaint and is not barred by the statute of limitations.

### (ii) As-applied challenge to enactment of the 2003 Ordinance

First Korean's as-applied challenge to the enactment the 2003 Ordinance is not barred by the statute of limitations, for reasons stated in relation to First Korean's facial challenge to the 2003 Ordinance.

### (iii) As-applied challenge to the 2007 variance application denial

The ZHB denied First Korean's variance application on August 13, 2007, and its decision became final thirty days later. *See* 53 P.S. § 11002-A. First Korean filed its second amended complaint (including an as-applied RLUIPA challenge based on the 2007 variance application denial) on July 8, 2008—less than four years later. This claim is not barred by statute of limitations.

### (iv) As-applied challenge to the police monitoring in 2009–10

Police monitored the Property in 2009–10 after First Korean filed its second amended complaint in 2008. This claim is not barred by the statute of limitations.

### (v) As-applied challenge to the Township's threats of fines

Although the Township has not imposed fines on First Korean, the threat of fines is ongoing. This claim is not barred by the statute of limitations.

### (vi) As-applied challenge to the Township's allegations that First Korean's use of the Property was illegal

The Township alleged that First Korean's use of the Property was illegal in this proceeding. *See* Tr. Arg. Summ. J. Mots. (paper no. 127), p. 25. This claim is not barred by the statute of limitations.

### 3.   Relief from stipulation regarding religious use at the Property

For First Korean to prevail on its RLUIPA claim, it must show that its use of the Property amounts to "religious exercise." Under RLUIPA, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the

person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B).

In January 2009, First Korean and defendants stipulated to facts in connection with the parties' cross-motions for summary judgment. *See* paper nos. 155, 157. Defendants stipulated that First Korean held Sunday services at Lynnewood Hall, and that ten or more people attended the services. *Id.* ¶¶ 45, 55. Subsequently, in First Korean's tax-exemption litigation, the Montgomery County Court of Common Pleas, after a two-day non-jury trial, found that no regular religious activity had occurred on the Property since 1998. *See* paper no. 196, ex. A, p. 9. Defendants argue that the state-court finding collaterally estops First Korean from relitigating religious use of the Property. First Korean argues that defendants' prior stipulation is binding.

"[V]alid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998). But a court can grant a party relief from a stipulation. *Id.* When deciding whether binding a party to a stipulation would result in "manifest injustice[,]" *id.* at 617, four factors are considered: (1) "the effect of the stipulation on the party seeking to withdraw the stipulation"; (2) "the effect on the other parties to the litigation"; (3) "the occurrence of intervening events since the parties agreed to the stipulation"; and (4) "whether evidence contrary to the stipulation is substantial[.]" *Id.* at 617–18.

The first two *Waldorf* factors weigh in favor of enforcing the stipulation. Although enforcing the stipulation would force defendants to concede past and current religious use of the Property, this is not necessarily fatal to their defense. Enforcing the stipulation would also allow First Korean to avoid an adverse judicial finding of fact. The third and fourth *Waldorf* factors

17

weigh heavily in favor of relieving defendants of their stipulation. The intervening event is the state-court tax litigation—defendants' counsel stated at oral argument that the parties stipulated to facts *before* the Court of Common Pleas trial began. *See* Tr. Arg. (paper no. 207), p. 27. The evidence contrary to the stipulation (the state-court factual finding after a two-day non-jury trial, affirmed on appeal) is substantial.

On balance, the *Waldorf* factors weigh in favor of relieving defendants of their religious-use stipulation.

### 4. Collateral estoppel

Under Pennsylvania law,

> collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Kiesewetter*, 585 Pa. 477, 484 (Pa. 2005). First Korean disputes the identity of issues between the state-court tax claim and the RLUIPA claim and that it had a full and fair opportunity to litigate the issue in state court.

### (i) Identity of issues

The issue decided in the tax-exemption case is not identical to the issue First Korean's RLUIPA claim presents. To qualify for a tax exemption for religious use, the Property must be an

"[a]ctual place[] of regularly stated religious worship[.]" *See* 72 P.S. § 5020-204(a)(1). RLUIPA

protects "religious exercise[.]" Under RLUIPA, "[t]he use, building, or conversion of real

property for the purpose of religious exercise shall be considered to be religious exercise of the

person or entity that uses *or intends to use* the property for that purpose." 42 U.S.C. § 2000cc-

5(7)(B) (emphasis added). In other words, the tax statute looks to past and current use while

RLUIPA looks to past, current, and future intended use.

"To defeat a finding of identity of the issues for preclusion purposes, the difference in the

applicable legal standards must be 'substantial.'" *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d

Cir. 1995). The tax statute and RLUIPA do not substantially differ with regard to past and current

use, but they do substantially differ with regard to intended use. The identity-of-issues prong of

the collateral-estoppel test is satisfied only for past and current religious use.

### (ii)  Full and fair opportunity to litigate

First Korean also argues that collateral estoppel should not apply because the state-court

tax-exemption proceeding was flawed. First Korean claims that the state-court trial involved "a

complete phony [tax fraud] investigation" and witnesses whose names did not appear on a

pretrial list. *See* paper no. 207 at 22–25.

"A party has been denied a full and fair opportunity to litigate only when state procedures

fall below the minimum requirements of due process as defined by federal law." *Bradley v.

Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir. 1990). The Court of Appeals, when

evaluating due process, considers whether there has been:

> (1) notice of the basis of the governmental action; (2) a neutral
> arbiter; (3) an opportunity to make an oral presentation; (4) a means
> of presenting evidence; (5) an opportunity to cross-examine witnesses

> or to respond to written evidence; (6) the right to be represented by
> counsel; and (7) a decision based on the record with a statement of
> reasons for the result.

*Rogin v. Bensalem Twp.*, 616 F.2d 680, 694 (3d Cir. 1980).

First Korean had notice of the basis of the government action (*i.e.*, the Montgomery

County Board of Assessment had denied tax relief because it would have created an adverse

effect on public health, etc.). The Court of Common Pleas is a neutral arbiter, and the state-court

opinion shows that the court considered First Korean's oral presentation, its witnesses, and its

physical evidence when reaching a decision. *See* paper no. 196, ex. A. First Korean was

represented by counsel before the state court, and the state court's decision was based on the

record. *Id.* Consideration of the *Rogin* factors establishes that First Korean was not denied a full

and fair opportunity to litigate in state court.

Because First Korean received a full and fair opportunity to litigate before the state court,

and because this court finds an identity of issues between the tax-exemption issue and the

RLUIPA issue for past and current religious use, there has been no religious use on the Property

from 1998 through March 2010 (the month of the state court's non-jury trial). Because collateral

estoppel does not affect First Korean's opportunity to show future intended use, collateral

estoppel does not negate First Korean's RLUIPA claim.

### 5.  Res judicata

When First Korean applied for a variance in 2007, it failed to bring claims under

RLUIPA. First Korean mentioned RLUIPA at the hearing without amending its application to

include RLUIPA claims and presented no evidence that could have allowed the ZHB to grant a

variance. *See* paper no. 133, ex. O, p. 7. The ZHB invited First Korean to amend its application to include RLUIPA claims, but First Korean refused its invitation. At issue is whether First Korean can now claim, in Federal court, that the ZHB violated RLUIPA.

First Korean could have brought its RLUIPA claims before the zoning board, but we decline to apply *res judicata* to preclude litigation of First Korean's RLUIPA claims. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (*quoting United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). Congress intended RLUIPA to "accord religious exercise heightened protection from government-imposed burdens," *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005), and implicitly requires courts to view zoning-board decisions in that light. "[L]ocal [land-use] authorities are in a better position than the courts to assess the burdens and benefits" of the land-use interests at stake, *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 598 (3d Cir. 1998), but a zoning board's final decision cannot evade judicial review because a party fails to invoke a particular statute before the zoning board. *Res judicata* does not preclude consideration of First Korean's unlitigated RLUIPA claims.

### 6. RLUIPA's substantial-burden provision

First Korean argues that its religious exercise has been substantially burdened by the actions of defendants.[5] Defendants argue that First Korean failed to offer evidence showing that defendants' actions substantially burdened its religious exercise.

Under RLUIPA's substantial-burden provision:

> [n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).

RLUIPA defines "religious exercise" to encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief[,]" including "[t]he use, building, or conversion of real property for the purpose of religious exercise[.]" 42 U.S.C. § 2000cc-5(7). The statute does not contain a similarly express definition of the term "substantial burden," but the legislative history shows that the term is to be interpreted in accordance with First Amendment jurisprudence. *See* 146 Cong. Rec. S7774, 7776 (July 27, 2000) (Joint Statement of Senators Hatch and Kennedy).

---

[5] First Korean's attack on the 2003 Ordinance under RLUIPA's substantial-burden provision is an "as-applied" attack. Even if First Korean attacked the 2003 Ordinance on its face, we fail to see how an attack under RLUIPA's substantial-burden provision—which requires an evaluation of a statute's effect on the religious exercise of a particular plaintiff—can be anything other than an as-applied attack.

Establishing a substantial burden requires "more than merely inhibiting or constraining any religious exercise." *See, e.g.*, *Albanian Associated Fund v. Twp. of Wayne Planning Bd.*, No. 06-cv-3217 (PGS), 2007 U.S. Dist. LEXIS 73176, at *27, 2007 WL 2904194, at *9 (D.N.J. Oct. 1, 2007).

> [A] ban on churches in [an] industrial zone cannot in itself constitute a substantial burden on religion, because then every zoning ordinance that did not permit churches everywhere would be a prima facie violation of RLUIPA. Religious organizations would be better off if they could build churches anywhere, but denying them so unusual a privilege could not reasonably be thought to impose a substantial burden on them . . . . Unless the requirement of substantial burden is taken seriously, the difficulty of proving a compelling governmental interest will free religious organizations from zoning restrictions of any kind[.]

*Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (citations omitted).

The Court of Appeals defined "substantial burden" in the context of RLUIPA in *Washington v. Klem*, 497 F.3d 272 (3d Cir. 2007). In *Washington*, an inmate in custody of the Pennsylvania Department of Corrections (the "DOC"), Henry Unseld Washington ("Washington"), was a founder and practitioner of the Children of the Sun Church, a religion that required practitioners to read four different Afro-centric books per day in order to teach others more effectively. The DOC, citing security, hygiene, and safety reasons, limited the amount of property any inmate could hold in his cell. Under the DOC's policy, Washington was allowed to hold in his cell three newspapers, ten magazines, and ten books.[6] Because books were "in essence

---

[6] Washington had access to the prison library, but the prison limited inmates to one library visit per week. Inmates could borrow only four books at a time. *Washington*, 497 F.3d at 275–76.

[Washington's] religion itself[,]" *id.* at 275, Washington, appearing *pro se*, sued several employees of the DOC and alleged that the DOC's ten-book limit violated RLUIPA and the First Amendment. The defendants moved for summary judgment. The district court, finding that the DOC's policy did not impose a substantial burden on Washington's religious practice and used the least restrictive means to further a compelling government interest, granted the motion. The district court found that because Washington possessed significant knowledge of the beliefs and teachings of his religion and was able to possess some books, "a palatable alternative exist[ed]" for Washington to practice his religion. *Id.* at 281–82.

The Court of Appeals reversed the district court's order and remanded for further proceedings. After considering RLUIPA's legislative history and caselaw from the Supreme Court and other appellate courts interpreting "substantial burden," the Court of Appeals adopted the following test:

> a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other [similarly situated persons] versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Id.* at 280. Under the second part of this test, the Court of Appeals found that the DOC's policy substantially burdened Washington's religious practice because Washington would run out of new books after three days. *Id.* at 282–83. The Court of Appeals also found that, although the DOC asserted a compelling interest in safety and security, *id.* at 284, the DOC failed to show that the ten-book limit was the least restrictive means to further that interest, *id.* at 286.

24

Although the ZHB's decisions have not favored First Korean, First Korean offered no evidence showing that the ZHB forced First Korean to "choose between following the precepts of [its] religion and forfeiting benefits otherwise generally available to other [similarly situated persons.]" *See Washington*, 497 F.3d at 280. Nor has First Korean shown that the ZHB put "substantial pressure" on First Korean to modify its behavior or to violate its beliefs. *See id.* First Korean has offered no facts that link First Korean's proposed use of the Property to its ability or intent to practice any particular precept of its religion. Defendants are entitled to summary judgment on this claim.[7]

### 7.  RLUIPA's equal-terms provision

First Korean alleges that defendants discriminated on the basis of religion and treated First Korean on less than equal terms with non-religious institutions. *See* 42 U.S.C. § 2000cc(b)(1) and (2).[8] Defendants argue that First Korean has failed to identify a similarly situated better-treated non-religious comparator.

---

[7]  Because we find that defendants have not substantially burdened First Korean, we need not decide whether the burden was in furtherance of a compelling government interest using the least restrictive means to further that interest. *See* 42 U.S.C. § 2000cc(a)(1).

[8]  Under § 2000cc(b)(1), "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." Under § 2000cc(b)(2), "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination."

> **(i)  As-applied challenges to the 2007 variance application denial and the Township causing police to monitor the Property in 2009–10, enacting the 2003 Ordinance, threatening First Korean with fines, and alleging First Korean's use of the Property was illegal**

A plaintiff asserting a claim under RLUIPA's equal-terms provision must show that: "(1) it is a religious assembly or institution[;] (2) subject to a land use regulation, which regulation[;] (3) treats the religious assembly on less than equal terms with[;] (4) a nonreligious assembly or institution[;] (5) that causes no lesser harm to the interests the regulation seeks to advance." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 270 (3d Cir. 2007). Such a showing requires a plaintiff to "identify a better-treated secular comparator that is similarly situated in regard to the *objectives* of the challenged regulation." *Id.* at 268.

In *Lighthouse*, a church that ministered to the poor purchased property in downtown Long Branch, New Jersey. The property was within the C-1 Central Commercial District, which did not allow churches. After Long Branch denied Lighthouse's application to use the property as a church, Lighthouse sued Long Branch for violations of RLUIPA and the Constitution.

As the litigation progressed, Long Branch adopted a Redevelopment Plan (the "Plan") strictly limiting the use of properties within the "Broadway Corridor" area where Lighthouse was located. The goals of the Plan included strengthening retail and city revenues, increasing employment opportunities, and creating a "'vibrant' and 'vital' downtown residential community centered on a core 'sustainable retail 'main' street.'" *Id.* at 258. Primary uses included theaters, cinemas, and art studios. Secondary uses included restaurants, bars, and clubs. Non-permitted uses included churches, schools, and government buildings. *Id.*

Lighthouse was denied use of the property as a church and filed an amended complaint alleging the Plan violated RLUIPA and the Free Exercise Clause. On cross-motions for summary judgment, the district court held that neither the Ordinance nor the Plan violated RLUIPA's equal-terms provision because, in order to prevail on an equal-terms claim, a religious assembly or institution must show that it is being treated worse than a similarly situated secular comparator. *Id.* at 259–60. The district court also found that even if Lighthouse were similarly situated to a better-treated secular comparator, the Ordinance and the Plan survived strict scrutiny, and the "substantial burden" requirement of RLUIPA, § 2000cc(a)(1), also applied to RLUIPA's equal-terms provision, § 2000cc(b)(1). *Id.* at 260.

The Court of Appeals affirmed the district-court entry of summary judgment for Long Beach as to Lighthouse's RLUIPA challenge to the Plan, vacated the district-court entry of summary judgment for Long Beach as to Lighthouse's RLUIPA challenge to the Ordinance, and remanded Lighthouse's RLUIPA challenge to the Ordinance to the district court to enter summary judgment for Lighthouse. The Court held that RLUIPA's equal-terms provision requires "a plaintiff to do something more than identify *any* nonreligious assembly or institution that enjoys better terms under the land-use regulation." *Id.* at 264. Instead, a plaintiff must show "a better-treated secular comparator that is similarly situated in regard to the *objectives* of the challenged regulation." *Id.* at 268. The Plan's objectives were well-documented, *id.* at 270, and it was internally consistent because it excluded churches and schools equally, *id.* at 272. The Ordinance's objectives were not well-documented, so Long Branch could not show a genuine issue of material fact regarding whether the Ordinance treated churches on less-than-equal terms with institutions that caused similar harm to its objectives. *Id.* at 272–73.

27

When Cheltenham Township enacted the 2003 Ordinance, approximately fifteen to twenty percent of the Township was occupied by tax-exempt religious and educational uses. *See* paper no. 70, ex. 3, p. 10. The objective of the 2003 Ordinance was to counteract the tax burden on residential landowners by increasing the tax base. *Id.* at 9–13. Other objectives (of both the 1929 Ordinance and the 2003 Ordinance) included, *inter alia*: (1) "specific land use classification system and development objectives for each classification"; (2) "Establishment of a population density factor for the Township"; (3) "Preservation of open spaces"; (4) "Continuation and expansion of religious, educational and public institutions and facilities"; and (5) "Provision for recreational needs of all residents[.]" *See* Cheltenham Twp., Pa., Code § 295-1 (2003), *available at* http://www.ecode360.com/6448533.

Section 295-14 of the Cheltenham Township Zoning Code permits golf courses (with the exception of driving ranges and miniature-golf courses) in R-2 districts. *Id.* § 295-14. Section 295-14 also permits cemeteries in R-2 districts if: (1) a minimum 10-acre lot is provided; and (2) the Board of Commissioners approves the cemetery as a conditional use. First Korean argues that its use of the Property would be similarly situated to that of a golf course or a cemetery because each would have a similar impact on the objectives of the 1929 and 2003 Ordinances—*i.e.*, they would create similar amounts of noise and traffic and preserve open space. *See* paper no. 153 at 20–21. Defendants argue that taxable golf courses and cemeteries are not similarly situated to First Korean because First Korean's intended use would be tax-exempt.

First Korean fails to show why these non-religious institutions are similarly situated to religious institutions with regard to the 2003 Ordinance's objective of increasing the tax base. First Korean argues that golf courses, like religious institutions, create traffic, noise, and

28

congestion. But the main objective of the 2003 Ordinance was to counteract the increasing tax burden on residential landowners, *see* paper no. 70, ex. 4, p. 9–10, and First Korean has failed to show that golf courses and cemeteries are similarly situated to First Korean in this regard (*i.e.*, tax-exempt). Because First Korean has failed to identify a similarly situated better-treated non-religious comparator, its as-applied attack under RLUIPA's equal-terms provision fails. *See Lighthouse*, 510 F.3d at 268. Defendants are entitled to summary judgment on this claim.

### (ii) Facial challenge to the 2003 Ordinance

First Korean argues that the 2003 Ordinance, on its face, treats religious institutions less favorably than non-religious institutions. *See* paper no. 64 at 32. "[I]f a land-use regulation treats religious assemblies or institutions on less than equal terms with nonreligious assemblies or institutions that are no less harmful to the governmental objectives in enacting the regulation, that regulation—without more—fails under RLUIPA." *Lighthouse*, 510 F.3d at 269. The 2003 Ordinance affects religious and educational uses identically by prohibiting both in the affected districts. *See, e.g.*, Cheltenham Twp., Pa., Code § 295-14 (2003), *available at* http://www.ecode360.com/6448665. Defendants are entitled to summary judgment on this claim.

### 8. RLUIPA's exclusion provision

First Korean alleges that defendants effected a total ban on religious assemblies in the R-2 district. *See* 42 U.S.C. § 2000cc(b)(3).[9]

---

[9] Under § 2000cc(b)(3), "[n]o government shall impose or implement a land use regulation that— (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."

A municipality cannot entirely exclude conduct the First Amendment protects. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 76–77 (1981). "The First Amendment requires . . . that [municipalities] refrain from effectively denying [land users] a reasonable opportunity" to do what the First Amendment protects within their borders. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986) (sustaining a zoning ordinance that "sought to make some areas available for adult theaters and their patrons, while at the same time . . . preventing those theaters from locating in other areas.").

First Korean has not shown it has been entirely excluded from the Township. Under Cheltenham's zoning code, religious uses are permitted in other areas by special exception. *See, e.g.*, Cheltenham Twp., Pa., Code §§ 295-27 to -69 (2003) (R-0, R-4, R-5, R-6, R-7, and R-8 districts), *available at* http://www.ecode360.com/6448532. First Korean, seeking to use the Property for religious purposes in its current location, applied to the ZHB for a variance to do so. Although the ZHB denied First Korean's application for a variance for the property, the ZHB did not altogether exclude First Korean from the Township. First Korean has failed to show that defendants have violated RLUIPA's exclusion provision. Defendants are entitled to summary judgment on this claim.

### C. Constitutional claims

#### 1. Statute of limitations

The statute of limitations for claims under 42 U.S.C. § 1983 is the same as the Commonwealth statute of limitations for personal injury. *Sameric Corp. of Del. v. City of Phila.*,

142 F.3d 582, 599 (3d Cir. 1998). Because the Pennsylvania statute of limitations for personal injury is two years, the statute of limitations for First Korean's § 1983 claims is two years. *See id.*

### (i)  Facial challenges to the 2003 Ordinance

The Township adopted the 2003 Ordinance on April 25, 2003. First Korean filed its original complaint on December 12, 2005. Although First Korean's original complaint was filed more than two years after the Township adopted the 2003 Ordinance, it is unclear whether facial constitutional claims (other than those arising under the Takings Clause) are subject to a limitations period. *See, e.g.*, *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) ("We join the Fourth Circuit in expressing serious doubts that a facial challenge under the First Amendment can ever be barred by a statute of limitations."), *cert. denied*, 544 U.S. 968 (2005). The Third Circuit Court of Appeals has not addressed this issue. In the absence of controlling authority, the court will consider First Korean's facial constitutional challenges to the 2003 Ordinance on their merits.

### (ii) As-applied challenges to the 1998 special-exception application denial

After First Korean appealed the denial of its application, the Pennsylvania Supreme Court denied allocatur on May 30, 2001. First Korean had 90 days to file a petition for a writ of certiorari to the U.S. Supreme Court to review the state-court judgment, *see* Sup. Ct. R. 13(1), but did not do so. The judgment became final on August 28, 2001 (90 days after May 30, 2001). First Korean filed its original complaint on December 12, 2005—more than two years later. First Korean's as-applied constitutional challenges to the 1998 special-exception application are barred by the statute of limitations.

### (iii) As-applied challenges to the 2000 special-exception denial

The ZHB denied First Korean's re-application for a special exception on August 14, 2000. First Korean did not appeal, and the ZHB's decision became final on September 13, 2000 (30 days after August 14, 2000). *See* 53 P.S. § 11002-A. First Korean filed its original complaint on December 12, 2005—more than two years later. First Korean's as-applied constitutional challenges to the 2000 special-exception denial are barred by the statute of limitations.

### (iv) As-applied challenges to the 2007 variance application denial

The ZHB denied First Korean's variance application on August 13, 2007. First Korean did not appeal, and the ZHB's decision became final 30 days later on September 12, 2007. *See* 53 P.S. § 11002-A. First Korean filed its second amended complaint (including allegations about the 2007 variance application denial) on July 8, 2008—less than two years later. First Korean's as-applied challenges to the 2007 variance application denial are not barred by the statute of limitations.

### (v) As-applied challenges to the Township enactment of the 2003 Ordinance

The 2003 Ordinance was passed on April 15, 2003. First Korean challenged the Township enactment of the 2003 Ordinance in its original complaint on December 12, 2005—more than two years later. First Korean's as-applied challenges to the Township enactment of the 2003 Ordinance are barred by the statute of limitations.

**(vi) As-applied challenges to police monitoring of the Property in 1997**

The 1997 police monitoring occurred seven years before First Korean filed its original complaint. This claim is barred by the statute of limitations.

**(vii) As-applied challenges to police monitoring of the Property in 2009–10**

The police monitoring in 2009–10 occurred after First Korean filed its second amended complaint in 2008. This claim is not barred by the statute of limitations.

**(viii) As-applied challenges to the Township's acts of threatening First Korean with fines and alleging that First Korean's use of the Property was illegal**

Although the Township has never imposed fines upon First Korean, the threat of fines is ongoing. The Township also alleged that First Korean's use of the Property was illegal in this proceeding. *See* paper no. 127, p. 25. These claims are not barred by the statute of limitations.

### 2. The Free Exercise Clause of the First Amendment

The Free Exercise Clause of the First Amendment applies to the Township and the ZHB under the Fourteenth Amendment, *see Cantwell v. Conn.*, 310 U.S. 296, 303 (1940). It provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof.*" U.S. Const. amend. I (emphasis added). Unlike RLUIPA, the First Amendment does not include land use as religious exercise. *Lighthouse*, 510 F.3d at 273. A religious plaintiff challenging a zoning regulation under the Free Exercise Clause must "explain in what way the

inability to locate in the specific area affects its religious exercise. . . . (as opposed, for instance, to its pocketbook or its convenience)." *Id.* at 274–75.

> **(i)  As-applied challenges to the 2007 variance application denial and the Township causing police to monitor the Property in 2009–10, threatening First Korean with fines, and alleging First Korean's use of the Property was illegal**

Because there was no religious use occurring on the Property at the time of the 2007 variance application denial (under the 2003 Ordinance), *see supra* IV.B.4, the ZHB's actions could not have affected First Korean's religious exercise because there was no religious exercise to affect. First Korean has not specified in what way the inability to locate at the Property, as opposed to anywhere else, affected its religious exercise. *See Lighthouse*, 510 F.3d at 274. Nor has First Korean shown that threats of fines, allegations of illegal use, and police monitoring have affected its religious exercise. *Id.* First Korean's as-applied challenges to the 1929 Ordinance and the 2003 Ordinance fail. Defendants are entitled to summary judgment on these claims.

### (ii) Facial challenge to the 2003 Ordinance

The Free Exercise Clause offers no protection when a neutral, generally applicable law incidentally burdens religious practice. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). If the law imposing the burden on religious freedom is not neutral or not generally applicable, it violates the First Amendment unless it satisfies strict scrutiny (*i.e.*, unless it is narrowly tailored to advance a compelling government interest). *Id.* at 546.

A law is not neutral if it has as its "object . . . to infringe upon or restrict practices because of their religious motivation." *Id.* at 533. The 2003 Ordinance is neutral; there is no evidence that it was developed with the aim of infringing on religious practices and it does not reveal a value judgment that religious reasons for assembling in a residential area are less important than secular reasons. *Id.* at 537–38.

A law is not generally applicable when it "proscribes particular conduct only or primarily when religiously motivated." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002). The 2003 Ordinance is generally applicable; it prohibits religious *and secular* uses that are not likely to further the Cheltenham Township goal of increasing the tax base. *See Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 275–76 (3d Cir. 2007).

As a neutral, generally applicable law, the 2003 Ordinance is not subject to strict scrutiny. The 2003 Ordinance must satisfy only rational-basis review to withstand constitutional attack. To prove that the 2003 Ordinance fails rational-basis review, First Korean must "negative every conceivable basis which might support [the 2003 Ordinance], whether or not the basis has a foundation in the record." *See Heller v. Doe*, 509 U.S. 312, 320–21 (1993) (internal citations and quotation marks omitted). First Korean has not shown that increasing tax ratables is an impermissible Commonwealth objective, nor has it shown that distinguishing between taxable and tax-exempt uses is not rationally related to that objective. The 2003 ordinance does not violate the First Amendment.[10] Defendants are entitled to summary judgment on this claim.

---

[10] Because First Korean's facial challenge to the 2003 Ordinance fails, First Korean's facial challenge to the 1929 Ordinance—which is less restrictive than the 2003 Ordinance—fails as well.

### 3. The Equal Protection Clause of the Fourteenth Amendment

**(i)  As-applied challenges to the 2007 variance application denial and the Township causing police to monitor the Property in 2009–10, threatening First Korean with fines, and alleging First Korean's use of the Property was illegal**

In Count II of its second amended complaint, First Korean alleges that the Township violated its Fourteenth Amendment right to equal protection. To establish an equal protection claim, First Korean must establish that it was treated differently from other similarly situated entities granted similar variances in a similarly zoned parcel of land. *See Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 137 (3d Cir. 2002). If First Korean demonstrates it has been treated differently from other similarly situated users, then the Township must justify its actions by showing that the different treatment is rationally related to a legitimate state interest. *Id.*

In *Congregation Kol Ami*, a Reform Jewish Synagogue desired to relocate to a 10.9-acre parcel of residentially zoned land in Abington Township.[11] The property was previously owned by the Sisters of Nazareth, who used the property primarily as a residence but also for religious services attended mainly by the Sisters and their relatives. *Id.* at 128.

In 1999, the Congregation entered into an agreement of sale with the Sisters. Because the Township's zoning ordinance excluded churches and other religious institutions from the residential district, the Congregation applied to the Township Zoning Hearing Board for either a variance or a special exception and proposed the following uses: (1) Shabbat services on

---

[11]  Abington Township is adjacent to Cheltenham Township. *See* Twp. Map of Montgomery Cty., Pa., *available at* http://www2.montcopa.org/montco/cwp/view,a,3,q,5265.asp.

alternate Fridays and Saturdays; (2) Hebrew classes on Wednesday evenings; (3) religious classes

on Sunday mornings; (4) four High Holy Day services in the fall; and (5) various other religious

meetings, celebrations, and receptions (*e.g.*, Bar and Bat Mitzvah services). *Id.* at 128. The

Township Zoning Hearing Board denied the Congregation's application because the

Congregation's proposed use of the property, unlike the Sisters' use, was for religious and not

residential purposes. *Id.* at 129.

The Congregation and its Rabbi, alleging violations of RLUIPA, Municipalities Planning

Code, Pennsylvania Constitution, and the First and Fourteenth Amendments of the U.S.

Constitution, sued the Township and its Zoning Hearing Board, among others. The Congregation

moved for partial summary judgment. The district court, finding that the Township's zoning

ordinance, as-applied, violated the Equal Protection Clause, granted the motion. Relying on *City*

*of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), the district court held that the

Ordinance was not rational because the impact of the permitted and non-permitted uses was

similar in terms of traffic, noise, light, and other disruptions. *Congregation Kol Ami*, 309 F.3d at

129–30.

The Court of Appeals, vacating the district court's order, remanded for further

proceedings because *City of Cleburne* involved a group home for the mentally retarded that was

*similarly situated* to other group homes permitted under the zoning ordinance. Only after the *City*

*of Cleburne* Court concluded that the uses were similarly situated did the Court inquire into the

uses' impact. *Id.* at 136–37. The Court of Appeals held that the Congregation must first

"demonstrate that it is similarly situated to other permitted entities by demonstrating that it is

similarly situated in relation to the Township's purpose in creating the R-1 Residential District."

*Id.* at 139. Because the district court had failed to make this inquiry, the Court of Appeals

remanded for the district court to resolve the issue. The Court of Appeals also noted,

> [I]f we were to conclude, as the District Court did, that all uses with a similar impact must be treated alike, regardless of the fact that such uses may be fundamentally distinct, we would turn zoning law on its head. That is, such a conclusion would mean not only that churches must be allowed in a zone where country clubs are allowed (based on the conclusion that country clubs impact light, traffic and noise as well), but also, by necessity, that a host of other uses that impact light, traffic and noise must also be permitted in such zones. But this would strip of any real meaning the authority bestowed upon municipalities to zone since the broad power to zone carries with it the corollary authority to discriminate against a host of uses that a municipality determines are not particularly suited for a certain district. Placing the burden on the complaining party first to establish that it is similarly situated with other, permitted uses preserves the clearly established local authority in the land use context.

*Id.*

First Korean argues that golf courses, which are permitted under the Ordinance, are

similarly situated to religious institutions because golf courses, like religious institutions, cause

traffic, noise, and congestion. Defendants argue that the court must first look at the purpose of

the ordinance before looking at the impact of the uses in deciding whether uses are similarly

situated. The purpose of the 2003 Ordinance was to increase the Township's tax base. First

Korean has failed to establish it is similarly situated to a better-treated secular comparator.

First Korean also argues that its use of the Property preserves open space, much like a

golf course or a cemetery. Preservation of open space is one of the objectives of both the 1929

Ordinance and the 2003 Ordinance. *See* Cheltenham Twp., Pa., Code § 295-1 (2003), *available*

*at* http://www.ecode360.com/6448533. First Korean's proposed religious use would take place in

a building on thirty-three acres of mostly undeveloped land. But those thirty-three acres are

38

fenced-off from the general public. Even if this court found that First Korean is similarly situated to golf courses and cemeteries with regard to open space, the different treatment of taxable and tax-exempt uses is rationally related to its legitimate interest in increasing tax ratables and lowering the tax burden on residential owners. First Korean's as-applied challenges to the 1929 and 2003 Ordinances under the Equal Protection Clause fail. Defendants are entitled to summary judgment on these claims.

### (ii)  Facial challenge to the 2003 Ordinance

The Equal Protection Clause affords local governments wide latitude in handling matters of local control. *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388–89 (1926) ("The inclusion of a reasonable margin to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity.").

> A necessary corollary of the extensive zoning authority bestowed upon local municipalities, including the authority to create exclusively residential districts, is the authority to make distinctions between different uses and to exclude some uses within certain zones. Indeed, zoning is by its very design discriminatory, and that, alone, does not render it invalid.

*Congregation Kol Ami*, 309 F.3d at 136. If a municipality has a rational basis for distinguishing between uses and the distinction relates to the municipality's legitimate goals, courts should be "reluctant to conclude that the ordinance is improper." *Id.*

The township's basis for distinguishing between uses—*i.e.*, distinguishing between taxable and tax-exempt uses—is a rational basis. The distinction between the permitted and non-permitted uses is rationally related to increasing tax ratables and lowering the tax burden on residential owners. Distinguishing between taxable and tax-exempt uses allows the township to

regulate proliferation of tax-exempt uses and counteract an increasing tax burden on residential owners. The 2003 Ordinance, on its face, does not violate the Equal Protection Clause. Defendants are entitled to summary judgment on this claim.

## V. CONCLUSION

For the foregoing reasons, the court will deny First Korean's Second Renewed Motion for Summary Judgment (paper no. 134) and grant defendants' Second Renewed Motion for Summary Judgment (paper no. 133). First Korean's Motion for Expedited Rulings on Motions for Summary Judgment (paper no. 203) will be denied as moot. An appropriate order follows.